DEPARTMENT OF FARMS AND MARKETS OF THE STATE OF
NEW YORK, Substituted Plaintiff, in the Place and
Stead of JOHN J. DILLON, as Commissioner of the
Department of Foods and Markets of the State
of New York, Plaintiff, *v.* SWIFT & COMPANY,
Defendant.

(Supreme Court, New York Special Term, November, 1918.)

Injunctions — what will be restrained by permanent injunction in inter-
est of public health — statutes.

The selling of cold storage eggs, except in original packages,
unless branded, stamped or marked " cold storage " as required
by statute, will be restrained by permanent injunction in the
interest of the public health.

ACTION for a permanent injunction.

Merton E. Lewis, Attorney-General, for plaintiff.

White & Case, for defendant.

DELEHANTY, J.   This is an action for a permanent
injunction in which it is sought to restrain the defend-
ant from selling cold storage eggs in the state of
New York unless the same are stamped with the words
" cold storage " or their equivalent, as provided by
the rules and regulations of the department of farms
and markets.  The defendant contends that the require-
ments of the New York law have been suspended or
superseded for the duration of the war by the opera-
tion of the federal statutes for the control of food
supplies.  So far as material to the controversy
herein, the local provisions covering the subject read
as follows: "1. Every person or persons, corporation

or corporations engaged in the business of jobbing, wholesaling or retailing eggs shall, before offering or exposing for sale any eggs which have at any time been stored in a cold storage warehouse or any other place maintained for cold storage purposes, brand, stamp or mark on the shell of each egg the words ' cold storage ' or their equivalent in plain letters at least one-eighth inch high, provided such eggs do not already bear such brand, stamp or mark; and provided further that eggs may be sold in the original unbroken packages in which they have been received from such cold storage without being so branded, stamped or marked.'' The federal regulation covering the disposition of storage eggs is to be found in the rules promulgated by the president of the United States under the authority conferred on him by act of congress approved August 10, 1917. These rules, so far as applicable to the situation presented, are as follows: '' Rule 24. No licensee shall sell or offer for sale fresh meat, fresh meat products, fresh or frozen fish, poultry, eggs or butter which have been held for a period of thirty days or over in a cold storage warehouse unless such commodities are plainly marked, stamped or tagged, either upon the container wherein packed or upon the article of food itself, with the words ' cold storage.' The licensee shall keep such mark, stamp or tag in plain view and shall not represent or advertise as fresh any such commodities; and if he is a retailer shall display a placard plainly and conspicuously marked ' cold storage goods ' on the bulk, mass or articles of food. Any invoice or bill rendered for such goods shall clearly describe the commodities, using the words ' cold storage goods.' Rule 25. No licensee shall remove or erase, or permit to be removed or erased, any mark, stamp or tag bearing

the words ' cold storage ' or other words required by these rules and regulations to be placed on any food commodities or upon the containers wherein they are packed. When any food commodities are transferred from a container bearing the words ' cold storage,' or such food commodities are divided into smaller lots or units, the words ' cold storage ' shall be plainly and conspicuously marked upon the containers, cartons, packages or wrappers to which they are transferred." It will be observed that the state regulations are not antagonistic to those of the federal government, but, on the contrary, are in complete harmony therewith and extend the scope and effect thereof. The state regulations expressly except eggs in original packages, the branding of which is provided for under the federal requirements. After the eggs are removed from original packages and the possibility of fraud comes into existence the state requires such marking as will protect the purchasing public. The marking on the outside of containers of eggs in accordance with the president's proclamation may be of sufficient protection where eggs are sold in original packages, but it is apparent that when these eggs are taken therefrom the federal regulations do not prevent the imposition of fraud as effectively as does the New York statute. The design of the local legislation is to protect the people of this state against fraud and deception by retailers in the sale of cold storage eggs. It is also an enactment which tends to promote the public health. In the proceedings which have hitherto been taken in this action the validity of the New York law has been sustained, and I am unable to determine that its operation has been suspended or displaced by any provision of the federal regulations. The trend of modern legislation is to safeguard the public

against profiteering and extortion, and that result is effected in this case by reading the federal and state regulations together. Furthermore, I do not see what hardship or injustice a merchant can experience in calling an article what it is. The authorities cited by the defendant herein are not in conflict with the conclusion which I have reached, and the position I have taken is amply fortified by precedent in the federal and state courts. *Hebe Co.* v. *Calvert,* 246 Fed. Repr. 711; *People* v. *Schmidt,* 218 N. Y. 256; *Plumley* v. *Massachusetts,* 155 U. S. 461; *People ex rel. Doscher* v. *Sisson,* 180 App. Div. 464; *United States* v. *Casey,* 247 Fed. Repr. 362. The relief prayed for by the plaintiff is accordingly granted.

Ordered accordingly.